
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| KEVIN DEROI SAWYER, | No. 17-16846 |
| Plaintiff-Appellant, | D.C. No. 3:15-cv-00220-JD |
| v. | |
| CHRIS MACDONALD, Lieutenant; R. CAVAGNOLO, Corrections Officer; IRA J. TATE, Appeals Coordinator, | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Northern District of California
James Donato, District Judge, Presiding

Argued and Submitted April 9, 2019
Pasadena, California

Before: GRABER and BYBEE, Circuit Judges, and ARTERTON,[**] District Judge.

Plaintiff Kevin Sawyer, an inmate in California's San Quentin State Prison,

appeals the summary judgment entered in favor of Defendant R. Cavagnolo on

Plaintiff's First Amendment claims. Plaintiff alleges that Defendant unlawfully

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Janet Bond Arterton, United States District Judge for the District of Connecticut, sitting by designation.

seized notes that Plaintiff took concerning 19 different publications and then threatened to validate Plaintiff as a gang member in retaliation for Plaintiff's pursuing administrative remedies to recover the notes. Reviewing de novo, and viewing the evidence in the light most favorable to Plaintiff, Soto v. Sweetman, 882 F.3d 865, 869 (9th Cir.), cert. denied, 139 S. Ct. 480 (2018), we reverse and remand.

1. The district court abused its discretion by denying sub silentio Plaintiff's Federal Rule of Civil Procedure 56(d) motion for an extension of time to complete further discovery. In a sworn declaration, Plaintiff stated: "Because it is difficult for plaintiff, a prisoner, to obtain access to information from prison officials he is entitled to special consideration; at the very least a stay until he obtains information on other defendants and necessary discovery. Rule 56(f), Fed. R. Civ. P." (Emphasis added.) We have "held consistently that courts should construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." Soto, 882 F.3d at 872 (quoting Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010)). Under that standard, Plaintiff's declaration met Rule 56(d)'s requirements. Blough v. Holland Realty, Inc., 574 F.3d 1084, 1091 n.5 (9th Cir. 2009).

2. The district court erred by granting summary judgment to Defendant on the seizure claim. The record does not contain the seized materials, making it impossible for the district court to have determined accurately "whether applying the regulation to [Plaintiff's] speech—whatever its value—was rationally related to the legitimate penological interest asserted by the prison." Hargis v. Foster, 312 F.3d 404, 410 (9th Cir. 2002). Defendant never produced the seized materials during discovery, leaving us with nothing to review other than his conclusory statements about the dangerous nature of the materials (and Plaintiff's conclusory statements to the contrary).

We owe deference to prison officials, who must make difficult choices about how best to run a correctional facility. Ashker v. Cal. Dep't of Corr., 350 F.3d 917, 922 (9th Cir. 2003). But "deference does not mean abdication." Walker v. Sumner, 917 F.2d 382, 385 (9th Cir. 1990). We owe deference to the decisions that prison officials make based on the facts, but not to their statements of what the facts are. See, e.g., Turner v. Safley, 482 U.S. 78, 86 (1987) (stating that "courts should ordinarily defer" to prison officials' "judgments regarding prison security" (emphasis added)).

In other words, if we knew what the seized materials were and could examine them, we would owe deference to Defendant's decision about how to deal

3

with the materials. We need not, and do not, defer to his conclusory characterization of the materials as dangerous. <u>Walker</u>, 917 F.2d at 385. We agree that materials need not appear on the California Department of Corrections and Rehabilitation's list of banned publications for a seizure to be permissible, but that alone does not win the day for Defendant.

3. The district court also erred by granting summary judgment to Defendant on the retaliation claim. In his sworn declaration, Plaintiff provided enough evidence to survive summary judgment, especially as a pro se inmate. <u>See</u> <u>Thomas</u>, 611 F.3d at 1150 (holding that courts "should avoid applying summary judgment rules strictly" to pro se inmates). Taking Plaintiff's version of events as true, he established that: (1) Defendant took an adverse action against Plaintiff by threatening to validate him as a gang member;[1] (2) given the suspect timing, Defendant's threat occurred because of (3) Plaintiff's protected conduct of filing a prison grievance; (4) the threat of gang validation and its attendant consequences, including a transfer to solitary confinement, would "chill <u>or</u> silence a person of ordinary firmness from future First Amendment activities"; and (5) the threat "did

---

[1] It does not matter that Plaintiff never actually received any gang validation points on his record. <u>See</u> <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1270 (9th Cir. 2009) (holding that a "mere <u>threat</u> of harm can be an adverse action" if issued in retaliation for a prisoner's use of grievance procedures).

4

not reasonably advance a legitimate correctional goal," because Plaintiff was not involved with a prison gang. <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567–69 (9th Cir. 2005).

4. Finally, the district court erred by granting qualified immunity to Defendant. The law was clearly established in 2012 that correctional officers violate the First Amendment by retaliating against prisoners for exercising the First Amendment right to file prison grievances, <u>Brodheim</u>, 584 F.3d at 1269, including when officers retaliate by falsely validating (or threatening to validate) a prisoner as a gang member, <u>Bruce v. Ylst</u>, 351 F.3d 1283, 1288–90 (9th Cir. 2003). Likewise, the law was clearly established in 2011 that correctional officers violate the First Amendment by seizing notes or literature "not advocating violence or illegal activity" and not "reasonably likely to cause violence at the prison." <u>McCabe v. Arave</u>, 827 F.2d 634, 638 (9th Cir. 1987).

**REVERSED and REMANDED.**